## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

WEST BEND INSURANCE COMPANY,          )
                                       )
    **Plaintiff,**                          )
                                       )          **Consolidated Cases:**
  **v.**                                   )          **Case Nos. 24-cv-3025,**
                                       )          **24-cv-3238**
                                       )
                                       )
**TRANSITIONS OF WESTERN ILLINOIS,**   )
**INC., LACEY EATON, ERIC KAMINSKY,**  )
**JANE DOE, as Plenary Guardian for**  )
**The person and Estate of JOHN DOE,** )
**disabled adult, and SELECTIVE**      )
**INSURANCE COMPANY OF AMERICA**       )
                                       )
    **Defendants.**                         )

## ORDER

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court are Defendant Selective Insurance Company of America's ("Selective") Motions for Judgment on the Pleadings, (Docs. 24, 36), and Plaintiff West Bend Insurance Company's ("West Bend") Cross-motion for Judgment on the Pleadings. (Doc. 40).

## I.    PROCEDURAL BACKGROUND

This case involves an insurance coverage dispute over an underlying state claim against Transitions of Western Illinois, Inc. ("TWI") and two of its employees, Lacey Eaton and Eric Kaminsky (collectively, "TWI Defendants"). Both West Bend and Selective

filed separate cases (Case Nos. 24-cv-3025 and 24-cv-3238, respectively),[1] now consolidated, seeking a judicial declaration that they have no duty to defend or indemnify TWI Defendants in the underlying lawsuit. Additionally, West Bend seeks a declaration that Selective owes a duty to defend TWI defendants in the underlying lawsuit and seeks equitable subrogation or, in the alternative, equitable contribution from Selective. (Doc. 21 at 14–17). Selective has moved for judgment on the pleadings against TWI Defendants, (Doc. 24),[2] and against West Bend (Doc. 36). West Bend responded with a cross-motion for partial judgment on the pleadings seeking a declaration that Selective has a duty to defend TWI Defendants. (Doc. 40 at 3).

II.    **FACTUAL BACKGROUND**

A. **The Underlying State Litigation**

TWI is a not-for-profit corporation located in Quincy, Illinois that provides mental health, rehabilitation, and educational services. On April 23, 2025, Jane Doe filed a Second Amended Complaint in the Circuit Court of Adams County alleging personal injury to her developmentally disabled adult son, John Doe ("State Complaint"). (Doc. 40 at 4). The State Complaint brings claims against TWI for violations of Doe's individual rights, claims against all TWI Defendants for negligence, and claims against Golden "Fritz" Marlow for battery and sexual assault. (*Id.* at 28–37). The claims stem from several alleged sexual abuses Fritz inflicted upon John Doe ("Doe") between 2019 and 2022 while they were both living in a Quincy, Illinois group home owned and operated by TWI. (*Id.* at

---

[1] Unless otherwise indicated, citations to docket items refer to items in Case No. 24-cv-3025.
[2] This Motion was initially filed in Case No. 24-cv-3238 as Doc. 20.

23–26). The State Complaint alleges Doe and Fritz were seen kissing by TWI staff but on May 14, 2019, Doe told TWI staff he was not interested in Fritz as a boyfriend (*Id.* at 23). Fritz proceeded to sexually abuse Doe multiple times. In or around June 2019, Fritz entered the group home's bathroom and put his finger up Doe's anus while Doe was drying off after a shower. In another instance, Fritz grabbed Doe's penis area and hit him in the back while on the group home's bus. (*Id.* at 24). On July 6, 2019, Doe reported to TWI staff that Fritz "put his finger up by [sic] butt again." (*Id.* at 25). TWI staff also found Doe and Fritz alone in the bathroom together on two separate occasions in 2019 (*Id.* at 24, 25). A couple years later, on October 25, 2021, Fritz hit Doe's penis while unattended on the bus (*Id.* at 25–26). The last incident occurred on August 13, 2022, when Fritz walked into Doe's room at the group home and grabbed and twisted Doe's penis (*Id.* at 26). The State Complaint alleges Doe, because of his mental disability, could not consent to sexual activity and, even if he could, did not consent to any sexual activity with Fritz. (*Id.* at 27).

The State Complaint alleges TWI Defendants were aware of many of these incidents and failed to properly respond. (*Id.* at 23–27). As a result of the sexual abuses, Doe has allegedly experienced anxiety, stress, nightmares, back pain, and stomach pain requiring treatment and counseling. (*Id.* at 26–27).

The Wisconsin-based West Bend and New Jersey-based Selective have both issued insurance policies applicable to TWI Defendants. West Bend's Policies were effective from October 6, 2017 to October 6, 2020 and include an endorsement covering physical abuse and sexual molestation. (Doc. 21 at 4, 6–7). Selective's Policy was effective from October 6, 2019 to October 6, 2020 and from October 6, 2021 to October 6, 2022 and

included Abuse or Molestation Liability Coverage ("Selective's Policies"). (*Id.* at 7–8).

Under its terms, the Abuse and Molestation Liability Coverage only applies if "[t]he

'abuse' or 'molestation' first takes place during the policy period . . . ." (Doc. 40 at 9). The

coverage's Definitions section provides in relevant part:

> **3.**  "Abuse" or "molestation" means each, every and all actual, threatened or alleged acts of physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct performed by one person or by two or more persons acting together.
>
> Each, every and all actual, threatened or alleged acts of "abuse" or "molestation" or mental abuse, sexual abuse, sexual molestation or sexual misconduct committed, participated in, directed, instigated or knowingly permitted by one person or by two or more persons acting together shall be considered to be one "abuse" or "molestation" regardless of:
>
> **a.**  The number of injured parties;
>
> **b.**  The period of time or policy periods over which the acts took place; and
>
> **c.**  The number of such actual, threatened, or alleged acts.
>
> "Abuse" or "molestation" comprising more than one act of physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct shall be deemed to take place at the time of the first such incident, act or encounter.

(Doc. 40 at 9–10).

## III.  DISCUSSION

### A. Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may

move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is

appropriate when there are no disputed issues of material fact and it is clear the moving

party is entitled to judgment as a matter of law. *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d

588, 595 (7th Cir. 2017). "To survive a motion for judgment on the pleadings (or a motion to dismiss), the complaint must 'state a claim to relief that is plausible on its face.'" *ADM Alliance Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 746 (7th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the motion, a reviewing court is "confined to the matters presented in the pleadings" and "must consider those pleadings in the light most favorable to" the nonmoving plaintiff. *Unite Here*, 862 F.3d at 595.

### B. Analysis

Under Illinois law, "to determine whether the insurer's duty to defend has arisen, the court must compare the allegations of the underlying complaint to the policy language." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 125 (1992). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Pekin Ins. Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). When determining whether a duty to defend has arisen, "[t]he underlying complaints and the insurance policies must be liberally construed in favor of the insured." *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74 (1991).

### (1) Disputed Facts

TWI Defendants argue Selective's motion is inappropriate because they dispute allegations in the underlying complaint. (Doc. 22 at 5) (filed in Case No. 24-cv-3238). However, to determine whether a party has a duty to defend, courts look at the allegations of the underlying complaint, not the veracity of those allegations. This principle comes from the "eight corners" rule for determining a duty to defend, which

requires the court to compare the four corners of the underlying complaint with the four corners of the insurance contract to determine whether allegations fall within, or potentially within, the policy's coverage. *Geisler v. Everest Nat. Ins. Co.*, 2012 IL App (1st) 980 N.E.2d 1170, 1185 (citing *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 393 (1993)); *see also American Family Mutual Insurance Co. v. Savickas*, 193 Ill.2d 378, 387 (2000); *Thornton v. Paul*, 74 Ill.2d 132, 144 (1978) (overruled on other grounds) ("As a general rule, the duty of an insured to defend an action brought against the insured is to be determined solely from the allegations of the complaint."). Therefore, the facts disputed by TWI Defendants are not material to the disposition of Selective's motion. Because no party disputes that the insurance policies and underlying state complaints in the record are true and correct copies, there are no disputed material facts preventing the Court's ability to rule on the pending motions.

### (2) Selective's Duty to Defend

Selective's policies provided Abuse or Molestation Coverage and were in effect between October 6, 2019 and October 6, 2020, and between October 6, 2021 and October 6, 2022. The Abuse or Molestation Coverage is the operative portion of Selective's policies, as the other relevant coverages are inapplicable because they contain exclusions regarding abuse or molestation. Selective does not substantively contend that the actions alleged in the State Complaint are not abuse or molestation as defined in its policies. Rather, Selective argues it is not required to defend or indemnify TWI Defendants for the underlying state claim when the first instance of sexual abuse alleged in the State Complaint occurred months before the inception of the first policy period. The Abuse or

3:24-cv-03025-CRL-DJQ    # 45    Filed: 09/26/25    Page 7 of 10

Molestation coverage in Selective's policy applies only if the "'abuse' or 'molestation' first takes place during the policy period." (Doc. 40 at 13; Doc. 41 at 2). Furthermore, under Selective's policy, "each, every and all actual, threatened or alleged acts of 'abuse' or 'molestation' . . . shall be considered to be one 'abuse' or 'molestation'" and "'abuse' or 'molestation' comprising more than one act . . . shall be deemed to take place at the time of the first such incident, act or encounter." (Doc. 40 at 9–10). Selective argues that under these provisions, every alleged sexual abuse Fritz committed against Doe is considered, for coverage purposes, to be one "abuse" or "molestation" that took place on or around June 2019.

West Bend contends Selective has a duty to defend because TWI Defendants may ultimately be held liable only for incidents that occurred during the Selective policy period. (*Id.* at 13). Citing the Illinois Supreme Court, West Bend argues the allegations of the underlying complaint must be liberally construed in the insured's favor and if even one theory of recovery is potentially covered by insurance, then a duty to defend arises. (*Id.* at 12) (citing *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 154, 155 (2005)). However, West Bend's argument is not entirely consistent with the precedent it relies upon. In several of the cases West Bend cites, a duty to defend is premised on the possibility that the underlying factual allegations and legal theories, no matter how improbable, turn out to be right. Here, West Bend is arguing that the duty to defend is contingent on certain factual allegations being *wrong*, and other allegations being right. Specifically, that TWI Defendants are found liable only for the alleged actions occurring during the policy period.

Page 7 of 10

West Bend's reasoning extends beyond the principles it cites. As discussed above, the State Complaint alleges Fritz penetrated Doe's anus with his finger and grabbed Doe's penis area while on the group home's bus. (*Id.* at 24). Both of these alleged incidents occurred in 2019 before Selective's policy period. TWI also allegedly knew about Fritz's behavior toward Doe before the policy period. In fact, a significant portion of the State Complaint is devoted to laying out these alleged instances of abuse from 2019 and TWI's inadequate responses. West Bend would have the Court effectively ignore these allegations and turn a blind eye to this section of the complaint. "Liberally construing" factual allegations from the underlying complaint in the insured's favor is distinct from ignoring them—a factual allegation cannot be construed out of existence. Applying Illinois law, the Seventh Circuit has declared that "the duty to defend is determined by what is charged in the complaint" *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1074 (7th Cir. 2004) and that a "complaint must be read as a whole to assess its true nature." *Connecticut Indem. Co. v. DER Travel Serv., Inc.*, 328 F.3d 347, 351 (7th Cir. 2003) (quoting *United Fire and Cas. Co. v. Jim Maloof Realty*, 105 Ill.App.3d 1048, 1049 (1982)).

West Bend does not describe any cases where courts have intentionally disregarded a significant portion of an underlying complaint's factual allegations to piece together a scenario triggering an insurer's duty to defend. However, Illinois courts have declined parties' requests to effectively ignore allegations. For example, in *Pekin Ins. Co. v. McKeown Classic Homes, Inc.*, property owners filed a complaint against an insured construction company alleging, in relevant part, the company had taken hundreds of wooden planks, a door, a hand sink, four windows and a glass door from plaintiffs. 2020

IL App (2d) 190631, 161 N.E.3d 1059, 1062. The insurer declined to defend the action, arguing that its policy with the insured included an exclusion regarding intentional conduct. *Id.* The insured argued that the alleged takings could have been done by mistake and could therefore fall outside the exclusion's scope. *Id.* at 1068. The court agreed with the insurer, finding the underlying complaint unambiguously alleged the intentional tort of conversion thereby precluding the possibility that the alleged takings were accidental. *Id.* at 1069–70. The court noted the complaint alleged that the company had refused to return the taken items and had characterized the taking of, and refusal to return, the items as "willful, wanton, malicious, and oppressive and undertaken with the intent to defraud." *Id.* Just as the court in *Pekin* refused to ignore factual allegations regarding the intentional nature of alleged conduct, this Court will not ignore factual allegations regarding the incidents occurring outside Selective's policy period. As such, Selective does not have a duty to defend TWI Defendants in the underlying action.

The Illinois Supreme Court has concluded that "where there is no duty to defend, there will be no duty to indemnify." *Crum & Forster Managers Corp. v. Resol. Tr. Corp.*, 156 Ill. 2d 384, 398 (1993). Therefore, because Selective does not have a duty to defend, it also does not have a duty to indemnify TWI Defendants. Furthermore, West Bend's equitable subrogation and equitable contribution claims are denied as they are contingent on Selective having a duty to indemnify TWI Defendants.

## IV.    CONCLUSION

Accordingly, Selective's Motions for Judgment on the Pleadings, (Docs. 24, 36), is

GRANTED and West Bend's Cross-motion for Judgment on the Pleadings, (Doc. 40), is

DENIED.

Enter: _____9/26/2025_____

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE